## LEONORA P. KELSO and WILLIAM R. McCREADY v. ELIZABETH KELLY.

Where a valid contract has been entered into for the renewal of a lease, by which it is provided that the amount of rent to be paid shall be settled by arbitration, and either party refuses to appoint an arbitrator, a court of equity will compel a specific performance, and order a reference to ascertain what the amount of rent should be.

A lease, executed by the plaintiffs to one K. for a term of five years, contained a provision that the lessee " might have the privilege of a further lease of the premises for five years, the rent to be fixed by two persons, chosen," &c. Before the expiration of the lease, the lessee died, and the defendant, his devisee and the sole executrix of his will, entered and continued in possession of the premises until after the expiration of the term of the lease. The defendant and an agent of the plaintiffs, but without the plaintiffs' authority, appointed a person each, who agreed upon a rent to be paid by the defendant for the renewed term. The plaintiffs refused to ratify the act of the agent, and notified the defendant that they were ready to proceed by

COURT OF COMMON PLEAS.

Kelso v. Kelly.

arbitration, as provided by the lease. The defendant refused to appoint an arbitrator. In an action to have the alleged arbitration declared void, and to have the rent for the renewed term fixed under the direction of the Court,— *Held*, on a demurrer to the complaint, that the action was maintainable.

The continuing in possession by the defendant after the expiration of the lease, was equivalent to an election to take the further lease; and by such election the covenant to appoint arbitrators became binding upon both parties.

On the refusal of the lessee, therefore, to appoint an arbitrator, as the lessor could not give a new lease until the amount of the rent should be fixed, the lessor is entitled to the equitable aid of the court to ascertain it.

If the remedy which a party may have at law will not put him in a situation as beneficial to him as if the agreement were specifically performed, relief will be afforded in equity.

APPEAL by defendant from an order overruling a demurrer to the complaint.

The complaint alleges that in April, 1858, the plaintiff and one G. G. Waters, as trustee of E. M. McCready, leased to William Kelly the front and rear rooms of the rear building of Nos. 817 and 819 Broadway for five years, at a rent of eight hundred dollars per annum, with the privilege of a further lease for five years, at a rent to be fixed by two persons to be chosen by each party—if the two could not agree, they to choose a third. The rent under such renewed lease was to be not less than eight hundred dollars per annum.

William Kelly occupied the premises until March, 1862, when he died, leaving a will, whereby he devised all his property to the defendant, and appointed her sole executrix. The defendant entered into possession of the premises, and continued up to the commencement of the action.

In January, 1863, one J. S. Kelso, who acted as agent for the plaintiffs in collecting and letting the premises, negotiated with the defendant as to the rent of that portion of the demised premises for a renewed term of five years from May 1st, 1863, and being unable to agree, he and defendant appointed arbitrators to fix the same. These arbitrators, without consulting with the said Kelso, or examining witnesses,.&c., agreed upon twelve hundred dollars rent per annum for the renewal term. The arbitrators made an indorsement on the lease, the precise

terms of which were unknown to the plaintiffs. The plaintiffs claim that the said Kelso in arbitrating had no other authority than that of letting and collecting. That they refused to ratify his acts in this particular, and had notified the defendant to that effect, and that they were ready to proceed to arbitration, as provided in the lease. The defendant refused to proceed to such arbitration or to surrender the use of the premises.

The prayer of the complaint is, that the pretended appointment of arbitrators, and all the proceedings thereunder, be declared void, and the rent for the renewed term be fixed under the direction of the court.

The defendant demurred to the complaint, as not showing facts sufficient to constitute a cause of action. Judgment was ordered for plaintiffs on the demurrer.

The defendant appealed to the General Term.

*Stilwell & Swain*, for appellant.
*A. F. Cushman*, for respondents.

By the Court.—Daly, F. J.—The averment in the complaint is that John S. Kelso had not authority to select an arbitrator to determine what the rent under the renewed lease should be, other than his general authority to let and collect rents. This would not be sufficient to authorize him to appoint an arbitrator for the plaintiffs, and the proceedings on the part of the arbitrators were without authority, and not binding upon the plaintiffs.

The plaintiffs aver further that they notified the defendant that they would not be bound by the award, and that they were ready to proceed with the arbitration, as provided by the lease, but that the defendant refused; and as in consequence of that refusal, they cannot have the rent fixed in the manner prescribed by the lease, they ask that the Court shall ascertain and fix it.

Where a valid contract has been entered into for the renewal of a lease, by which it is provided that the amount of rent to be paid shall be settled by arbitration, and the party who is to give the lease refuses to appoint an arbitrator, a court of equity will compel a specific performance, and order a reference to ascertain what the amount of the rent should be. This was

held in the cases of *Gregory* v. *Mighell* (18 Ves. 328), *Gourlay* v. *The Duke of Somerset* (19 Id., 430), *Johnson* v. *Conger* (14 Abbott, 195). In the first of these cases there was a parol agreement for a lease of twenty-one years, the amount of rent annually to be fixed by two indifferent persons, under which the lessee entered and made improvements. This was regarded as a part performance of the contract, which took the agreement out of the statute of frauds ; and Sir William GRANT held that the failure of the arbitrator to 'fix the rent could not affect the agreement, and that the court would find some means of completing its execution. A specific performance was accordingly decreed, and it was referred to a master to ascertain what the rent ought to be.

In the next case (*Gourlay* v. *The Duke of Somerset*) a lease was to be given with such condition as the defendants' steward should judge to be reasonable and proper ; or, in the event of his death, by some other person, to be mutually agreed upon between the parties. The matter having been brought before the court by a bill filed by the tenant, the question arose whether the lease to be executed by the defendant should be settled by his steward, or by a master of the court ; and Sir William GRANT held that when the agreement to give a lease is binding, and such as ought to be executed, it does not require foreign aid to carry the details into execution ; and in the last case (*Johnson* v. *Conger*), it was expressly held by the Supreme Court of this district at General Term, that where there is a covenant in a lease for a renewal which one party is bound to give and the other to accept, the rent to be fixed by arbitration, and the landlord refuses to appoint an arbitrator, the court will compel the performance of the covenant, either by a renewal of the lease at the old rent, or will ascertain what should be the rent.

In two cases in this State, (*Whitefield* v. *Duffield*, Hoff. C. R., 110, and *Robinson* v. *Kettletas*, 4 Edwds. R. 67), it has been said that if the rent upon a covenant of renewal is left to be determined by arbitration, a court of equity will not compel a specific performance of the covenant. The last of these cases need not be examined, as it is founded upon the authority of the first, and the point was not involved. Nor was it involved in the first case, *Whitefield* v. *Duffield*, as the covenant for a re-

Kelso v. Kelly.

newal there was, that a new lease should be granted for twenty years *upon such terms as the lessor might think proper*, and the lessee might approve, which was held void for uncertainty—as the lessors, if they thought proper, might tender one upon such terms as to make it impossible for the lessee to approve and accept—and upon the ground that the lessors had expressly reserved to themselves the privilege of settling the amount and fixing the condition according to their own notion of what might be their interest. The decision of Vice-Chancellor HOFFMAN was sustained by the Court of Errors (*Duffield* v. *Whitlock*, 26 Wend., 55). In delivering his opinion the learned Vice Chancellor reviews a number of cases, the conclusion from which is expressed in the marginal note of the case in Hoffman's Report, probably written by Vice-Chancellor HOFFMAN himself, to this effect—"A distinction exists between a clause to grant a new lease and one to renew the lease. In the latter, there is an implied covenant to give a new one for the same terms, rent, and conditions. The rent to be paid is as essential a part of the contract to give a lease, as the price is upon a contract to sell. If the agreement does not contain it, and it is not supplied by other competent evidence, no performance can be enforced." And in the course of his opinion he says—"The rent to be paid is as essential a part of the contract to lease, as the price upon a contract to sell." The inference from this language would seem to be that which was drawn by Vice-Chancellor McCoun in *Robinson* v. *Keteltas, supra*, that if the implied covenant to renew upon the same terms is repelled by a clause in the covenant for renewal, declaring that the rent of the additional term shall be fixed by arbitration, the covenant is left uncertain as to the amount of rent, and if the parties refuse to arbitrate, the Court cannot compel a performance of the contract.

This is directly in conflict with the cases that have been cited from Vesey, which are not referred to in the opinion of Vice-Chancellor HOFFMAN, and with the decision of the Supreme Court of this district. Nor do any of the cases to which the Vice-Chancellor has referred warrant, in my judgment, such a conclusion. He refers especially to *Clinan* v. *Cook* (1 Sch. & Lef., 22), but in that case the term for which the lease was to be given was not mentioned in the agreement, and the Court of course could not ascertain it. But if the rent is to be fixed, not by the parties but by arbi-

Kelso v. Kelly.

tration, the Court can, by taking proof, ascertain and fix it with as much certainty as the arbitrators could do; and if the mode of determining it by arbitration cannot be resorted to through the refusal of one of the parties to appoint an arbitrator, there is no reason why the other party should lose the benefit of a contract in all other respects valid and binding, when the Court has the means of fixing what so eminent a judge as Sir William GRANT regarded as a mere matter of detail.

In this case the covenant for a renewal formed part of the original lease, and was valid—being in writing, and founded upon a consideration sufficiently expressed. The testator was to have the privilege of a renewal of the lease for a further term of five years; but he died before the original lease expired, and the defendant, who is his widow, his sole devisee, and his executrix, continued in possession after the expiration of the term, thereby indicating her intention to avail herself of the benefit of the covenant for a renewal. It was equivalent to an election to take the further lease for five years, and she might hold the premises subject only to the rent reserved by the original lease, until the plaintiffs performed their covenant by executing a lease for the additional term (*Holsman* v. *Abrams*, 2 Duer, 446; *Van Rensselaer* v. *Penniman*, 6 Wend., 569; *Cure* v. *Crawford*, 5 How., 293).

The plaintiffs were bound to give, and she to accept a new lease—for if, by her electing to continue the possession, the covenant became binding upon the one, the obligation was mutual, and was equally binding upon the other (Platt on Covenants, 21; *Holsman* v. *Abrams*, 2 Duer, 447).

But the plaintiffs cannot give the new lease until the amount of the rent is fixed, and as the defendant will not appoint an arbitrator, the plaintiffs are entitled to the equitable aid of the Court to ascertain it—that being the only mode under the circumstances in which it can be ascertained and fixed. The relief sought is purely of an equitable nature, to which the plaintiffs are entitled if they have no adequate legal remedy.

It is suggested that if the defendant will not appoint an arbitrator, the plaintiffs are not bound to give a new lease—but this would be to suffer her to remain in possession, subject to the former rent, which the plaintiffs may not think adequate; or it is suggested that if she has broken the covenant by refusing to

appoint an arbitrator, they may remove her from the possession by taking summary proceedings under the statute. It is sufficient, without stopping to inquire whether they have that remedy or not, to say that they may not desire to take back the premises, but prefer that the defendant should, under the existing circumstances, be held to the covenant to take a further lease— and if the equitable aid of the Court is necessary to put the plaintiff in a position to give the lease, it will not be refused. If the remedy which the party may have at law will not put him in a situation as beneficial to him as if the agreement were specifically performed, relief will be afforded in equity (*Harnett* v. *Fielding*, 2 Sch. & Lef., 553).

The judgment of the Special Term should be affirmed.