In the Matter of RAFFAELE MAZZARELLA, Appellant, against PAUL J. KERN et al., Constituting the Municipal Civil Service Commission of the City of New York, et al., Respondents.

Argued January 9, 1941; decided March 6, 1941.

*H. Eliot Kaplan* and *Samuel D. Smoleff* for appellant.

*William C. Chanler, Corporation Counsel* (*David Du Vivier* and *Paxton Blair* of counsel), for respondents.

DESMOND, J. By legislative mandate every public agency acquiring transit facilities from private corporations must continue to employ all employees of such corporations (except those officers deemed unnecessary), " who shall have been in the employ of said corporation for one year or more immediately prior to such acquisition and who shall be citizens or shall have filed declarations of intention to become citizens heretofore or within six months after this act takes effect," viz., June 19, 1939.  (L. 1939, ch. 927, § 2, otherwise known as the Wicks Act.)   The declared purpose of the act is to continue in their respective employments, without competitive examination, employees of transit corporations whose facilities are acquired, so that the operation and maintenance of those facilities will not be disorganized or the public safety endangered by the replacement of experienced with inexperienced personnel.  (Id. § 1.)   However, the Municipal Civil Service Commission is authorized to exclude from further employment any employee who is found " not to be a person of satisfactorily good character " and must exclude any employee who fails " to prosecute his application for citizenship in good faith and with due diligence and within the time limited by and subject to the provisions of law governing naturalization and citizenship."

Petitioner was an employee of the Brooklyn-Manhattan Transit Corporation when its facilities were acquired by the

city of New York in June, 1940. For twenty-six years he had worked for the corporate vendor and its predecessor. He had emigrated to this country from Italy in 1902, when he was twenty-one years old. At the time the above-quoted act became effective petitioner was not a citizen of this country. He had, however, ten months before the effective date of the act, filed with the Federal Naturalization Bureau an " Application for a Certificate of Arrival and Preliminary Form for a Declaration of Intention."

Only by filing such an application may the process of naturalization be initiated. After investigation and consideration of his application, the applicant is advised that he may or may not file a " Declaration of Intention." The last-mentioned form is specifically prescribed by sections 373 and 409 of title 8 of the United States Code.

Due to the number of similar applications and the policy of the Federal Naturalization Bureau of not considering an application out of the order of its receipt, petitioner's application was not acted upon until two years after it had been filed, at which time petitioner was permitted to file his " Declaration of Intention." Meanwhile, the transit facilities of petitioner's employer had been acquired by the city of New York and the period allowed by the above-quoted act within which to file a declaration of intention to become a citizen (six months from the effective date of the act) had expired.

After petitioner had actually filed the form designated by sections 373 and 409 of title 8 of the United States Code as a " Declaration of Intention," he received notice from the Municipal Civil Service Commission that his services would be terminated on October 31, 1940, for failure to comply with the provisions of the Wicks Act, in that he had not filed the last-mentioned form within six months of June 19, 1939, the effective date of the act.

By a proceeding under article 78 of the Civil Practice Act, petitioner seeks to restrain the defendants, members of the Civil Service Commission and of the Board of Transportation of the City of New York, from terminating his employment.

The position taken by the courts below and now urged upon us is that the words " declarations of intention to become citizens " are words of art denoting a particular form issued by the United States Department of Labor. The position seems to us untenable in view of the declared purpose of the act and context of the words.

Where competitive examinations are found to be impractical as a means of determining merit and fitness of applicants for positions in the civil service, other methods may be employed. (N. Y. Const. art. 5, § 6.)

The Wicks Act declares that it would be impractical to determine the merit and fitness of employees of transit corporations to be continued in their employments after the facilities of such corporations are acquired by a governmental agency and that in the interest of public safety such employees should become members of the civil service in the non-competitive class. The reasonableness of the declaration has not been questioned.

The privilege is not conferred, however, irrespective of the merit and fitness of the particular employee. Certain qualifications are prescribed: (1) The employee must have been in the employ of the corporation whose facilities are acquired for at least one year prior to such acquisition; (2) he must be of good character; (3) he must (a) either, be a citizen, (b) or have filed a declaration of intention to become a citizen before the act became effective, (c) or shall have filed a declaration of intention to become a citizen within six months after the act took effect; (4) if he were not a citizen at the time the act became effective, or by the time the transit facilities were acquired, he had " to prosecute his application for citizenship in good faith and with due diligence and within the time limited by and subject to the provisions of law governing naturalization and citizenship," in order to retain his position in the civil service.

To hold that the Legislature by the use of the words " declaration of intention " specified the precise form described in sections 373 and 409 of title 8 of the United States Code, is tantamount to holding that the Legislature

established a qualification which the very employees for whom it was intended would be unable to fulfill. Employees who were not citizens and who, like petitioner, were unable to file that particular paper for the reasons herein stated, could not then be continued in their employments notwithstanding that they had manifested their intention of becoming citizens by filing an application to be allowed to declare formally that intention. Further, such an emphasis of form over matter would defeat the purpose of the act in that the public would be deprived of the services of experienced workmen. In a single instance, perhaps that would not be serious. However, the Legislature could not have known how many employees of transit corporations there were who were not citizens and who had not manifested intentions to become citizens. Thus, to meet the possibility that the number of such employees might be large or might include a few key men the Legislature provided that those who were not citizens might show by overt act that they intended to become citizens, and that if they did so within a specified time they would qualify for a position in the civil service in the non-competitive class.

We do not rest our decision, however, upon the consequences that might ensue from a holding that the language used referred only to a particular form. If the language unequivocally referred to a particular act, we could not construe it to mean a different act, whatever the result might otherwise be. . However, section 2 of the Wicks Act not only admits of a different construction than that which has been given to it by the courts below, but compels a different construction.

In the same paragraph in which the phrase appears, there also appears the phrase " application for citizenship." Application for citizenship, as indicated above, is not one act, such as filing the formal " Declaration of Intention," but a series of acts. It was the act of initiating this process that the Legislature had in mind, rather than a particular step in that process, when it used the phrase " shall have filed declarations of intention to become citizens." In

other words, the Legislature has said that it is the policy of this State that all employees of governmental transit lines shall be citizens and that such employees as are not citizens at the time this act takes effect and have not heretofore manifested intentions to become citizens, hereafter may apply for admission to citizenship in the manner prescribed by the provisions of law governing naturalization, in order to become members of the civil service when the transit lines upon which they are employed are acquired by a governmental agency and shall prosecute their applications with due diligence thereafter in order to remain in their positions.

Petitioner had applied for admission to citizenship before the Wicks Act became effective. He had, therefore, done all that was required of him by the act in order to be continued in his employment when the transit lines upon which he was then working were acquired by the city of New York. That he has diligently and with good faith prosecuted his application is not disputed. He was, therefore, entitled to and, did become an employee in the non-competitive class of the civil service in June, 1940.

The orders of the Appellate Division and of the Special Term should be reversed and the application granted, with costs in all courts.

LEHMAN, Ch. J. (concurring). The provision of the statute that a city " acquiring and owning and operating a transit facility shall continue to employ all employees of any corporation theretofore owning or operating such transit facility * * * who shall have been in the employ of said corporation for one year or more immediately prior to such acquisition and who shall be citizens or shall have filed declarations of intention to become citizens heretofore or within six months after this act takes effect " does not make citizenship or declaration of intention to become a citizen a condition precedent to the establishment of the relationship of employer and employee between the city and an employee of the corporation who would otherwise be qualified, but is a requirement that any person who is not

a citizen must file a " declaration of intention to become a citizen " within six months after the act takes effect in order to authorize the city to continue the employment beyond that time. Concededly, if the words of the statute are given a narrow, technical construction no employee can comply with this requirement within the specified time.

This court has said that " It is an accepted maxim that the law does not seek to compel a man to do that which he cannot possibly perform. (Broom's Legal Maxims [4th ed.], 178.) And this reasonable rule has been applied in many cases. (*Harmony* v. *Bingham,* 12 N. Y. 99; *Matthews* v. *American Central Ins. Co.,* 154 N. Y. 449, 463; *Herter* v. *Mullen,* 159 N. Y. 28, 39, 43; *Buffalo & L. Land Co.* v. *Bellevue L. & I. Co.,* 165 N. Y. 247, 254.) " (*Walden* v. *City of Jamestown,* 178 N. Y. 213, 217.) Where the law requires that for the exercise of a privilege or right a notice must be given or an act performed within a specified time, we have said that the requirement " is not absolute and unyielding." (*Murphy* v. *Village of Fort Edward,* 213 N. Y. 397, 402; *Matter of Keefe,* 245 App. Div. 834; affd., 270 N. Y. 514.) Due diligence to comply with the statute as soon as possible should be sufficient under this statute and strict compliance should not be exacted, at least where the rights of no other person are thereby destroyed or impeded.

For these reasons, regardless of whether or not the statute receives the technical construction placed upon it by the courts below or the more liberal construction placed upon it in the opinion of Judge Desmond, I concur that the order of the Appellate Division should be reversed.

Finch and Lewis, JJ., concur with Desmond, J.; Lehman, Ch. J., concurs in separate opinion; Loughran, Rippey and Conway, JJ., dissent.

Orders reversed, etc.